Donald P. Sullivan (State Bar No. 191080)
Andrew J. Mailhot (State Bar No. 238956)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail: Donald.Sullivan@jacksonlewis.com
E-mail: Andrew.Mailhot@jacksonlewis.com

Attorneys for Defendants
C & J CLARK AMERICA, INC. and
C & J CLARK RETAIL, INC.

UNITED STATE DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHEAMAE AGDEPPA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>C & J CLARK AMERICA, INC., a Massachusetts Corporation; C & J CLARK RETAIL, INC., a Massachusetts Corporation; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br>State Court Case No. 25CV155086<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT UNDER 28 U.S.C. §§ 1332 (AS AMENDED BY THE CLASS ACTION FAIRNESS ACT OF 2005 PUB. L. 109-2, SECTION 4(A) ("CAFA")), 1441(A) AND (B) AND 1446** |

TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF RHEAMAE AGDEPPA, AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants C & J CLARK AMERICA, INC. and C & J CLARK RETAIL, INC. (collectively "Defendants"), hereby invoke this Court's jurisdiction under the provisions of 28 U.S.C. sections 1332, 1441(a), and 1446 and remove the above-entitled action to this Court from the Superior Court of the State of California, County of Alameda ("Alameda County Superior Court"), where it has been assigned Case Number

25CV155086. While Defendants dispute that Plaintiff RHEAMAE AGDEPPA ("Plaintiff") is entitled to any recovery in this action, Plaintiff's allegations in her Complaint reveal that she has placed in controversy a case that is within the jurisdiction of this Court.

**INTRODUCTION & PROCEDURAL HISTORY**

1. On or about November 17, 2025, Plaintiff filed a putative class action complaint against Defendants and DOES 1 through 50, inclusive, in the Superior Court of California, County of Alameda. This case is entitled *Rheamae Agdeppa, on behalf of herself and all others similarly situated, Plaintiff, v. C & J Clark America, Inc., a Massachusetts Corporation; C & J Clark Retail, Inc., a Massachusetts Corporation; and Does 1 – 50, inclusive, Defendants. See* Accompanying Declaration of Donald P. Sullivan ("Sullivan Decl."), ¶4, Ex. A (Complaint).

2. Plaintiff subsequently served the Complaint on Defendants via personal service on November 20, 2025. *See id.*, ¶5, Ex. B (Proofs of Service re Complaint).

3. In addition to receiving the Complaint, Defendants received the Summons on Complaint and a Civil Case Cover Sheet. *Id.* ¶6, Ex. C (summons and other process).

4. Plaintiff's Complaint sets forth nine (9) causes of action, including: (1) Failure to Pay All Minimum Wages; (2) Failure to Pay All Overtime Wages; (3) Meal Period Violations; (4) Rest Period Violations; (5) Failure to Pay All Sick Time; (6) Wage Statement Violations; (7) Waiting Time Penalties; (8) Failure to Reimburse Necessary Business Expenses; and (9) Unfair Competition. *Id.* ¶4, Ex. A.

5. The documents identified above and attached hereto as Exhibits A through C constitute all process, pleadings, and orders served on Defendants to date in the State Court matter prior to the filing of this Notice of Removal.

6. On December 19, 2025, in advance of filing this Notice of Removal, Defendants filed an Answer to the Complaint in this action. As of the date of the filing of this Notice of Removal, Defendants' Answer does not yet appear in the Superior Court's docket. *Id.* ¶7, Ex. D (Defendants' Answer).

/ / /

/ / /

**JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

7. Section 4 of the Class Action Fairness Act ("CAFA"), 28 U.S.C. section 1332(d)(2), has been amended to provide, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8. In addition, CAFA confers federal court jurisdiction only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

9. As set forth below, this action satisfies all the requirements for federal jurisdiction under CAFA. This action (1) involves an amount in controversy greater than $5,000,000; (2) involves at least one plaintiff and one defendant who is a citizen of different states; (3) involves a putative class of 100 or more purported members; and (4) does not involve a defendant who is a governmental official or entity.

**The Purported Amount in Controversy Exceeds $5,000,000**

10. CAFA authorizes the removal of class actions in which the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d).

11. When measuring the amount in controversy, the court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Fong v. Regis Corp.*, No. C-04497 RS, 2014 U.S. Dist. LEXIS 275, *5 (N.D. Cal. Jan 2, 2014), *citing Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 992, 1001 (C.D. Cal. 2002).

12. In *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S.Ct. 547 (2014), the United States Supreme Court held that, where the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only ***a plausible allegation*** that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554 (emphasis added) ("By borrowing Rule 8(a)'s 'short and plain statement' standard, corroborative history indicates, Congress intended to clarify

that courts should 'apply the same liberal rules [to removal allegations as] to other matters of pleading.").

13. Additionally, *Dart Cherokee* is clear that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Id.*, quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) ("'CAFA's primary objective' is to 'ensur[e] 'Federal Court consideration of interstate cases of national importance.'")

14. Although the Complaint is silent as to the amount in controversy, the amount in controversy exceeds $5,000,000 from the face of the complaint, especially considering the following allegations set forth by Plaintiff:[1]

a. Putative Class Definition: Plaintiff seeks to certify an overall class consisting of "All current or former non-exempt hourly employees who work or worked for Defendants in California during the four years immediately preceding the filing of the Complaint through the date of trial" as well as three sub-classes, including (i) an Overtime Subclass; (ii) a Wage Statement Subclass; and (iii) a Waiting Time Penalty Subclass. *See* Sullivan Decl., Ex. A at ¶ 42.

b. Putative Class Size: Plaintiff asserts that the members of the classes identified above are "so numerous that joinder of all members would be unfeasible and not practicable." *Id.* ¶ 43. Plaintiff further estimates "that the Classes consist of at least one hundred (100) individuals." *Id.* Plaintiff's allegations regarding the number of class members are consistent with information known to Defendants. Defendants estimate that for the purported class period of November 17, 2021, to the present, there are approximately 150 current, non-exempt California employees and at least 900 former non-exempt California employees, for a total class of at least 1,000 current and former non-exempt California employees. *See* Declaration of Chris Melendez ("Melendez Decl."), ¶5(a), (d), filed herewith.

///

[1]The assumptions set forth herein are based on the information provided by the Complaint. Thus, no admission is being made by Defendants with respect to liability, damages, certification, or any other purpose.

c. Plaintiff's Allegations Regarding First Cause of Action for Failure to Pay Minimum Wages: Plaintiff alleges that Defendants "consistently failed to accurately record and pay for all time worked" (Sullivan Decl., Ex. A at ¶ 20) and had a "policy and practice of failing to properly record the time worked by non-exempt employees, including all time spent working off the clock." *Id.* In connection with this Minimum Wage claim, Plaintiff seeks reimbursement of the unpaid balance, as well as "liquidated damages in an amount equal to the unpaid wages and interest accrued thereon" and "attorneys' fees and costs of suit." *Id.* ¶ 51.

There are at least 60,000 work weeks during the putative class period. Melendez Decl. ¶ 5(f).[2] Conservatively estimating five minutes of off-the-clock work per workweek based on Plaintiff's allegations of a "policy and practice" of requiring off-the-clock work and a "consistent" practice of not paying for said work, (*Id.* at 20), and further conservatively using the lowest minimum wage in place during the putative class period ($14.00/hour), the amount in controversy solely for reimbursement of unpaid wages is $70,000. And because Plaintiff seeks liquidated damages in an amount equal to those alleged unpaid wages under Labor Code section 1194.2, the amount in controversy is doubled to $140,000. This sum is further increased, because Plaintiff seeks penalties under Labor Code section 1197.1, in the amount of $100 for the initial violation, and $250 for all subsequent violations. Given a conservative estimate of 60,000 workweeks, and therefore a reasonable assumption of 30,000 pay periods for the class period, even if only the lower $100 penalty amount under Section 1197.1 is taken into account (as opposed to the $250 subsequent penalty amount), Plaintiff's request for penalties under Section 1197.1 further increases the amount in controversy on this claim by **$3,000,000**. The total amount in controversy on Plaintiff's First Cause of Action is therefore a minimum of **$3,140,000**.

d. Amount in Controversy on Second Cause of Action for Failure to Timely Pay Overtime/Double Time Wages: Plaintiff's Complaint raises the same general allegations with respect to failure to pay overtime as were made in connection with the first cause of action for failure to pay minimum wages. Sullivan Decl., Ex. A, ¶¶ 56-61. In addition, Plaintiff alleges that

[2]The actual number of workweeks is closer to 65,000; Defendants round down for purposes of providing a *conservative* estimate of the amount in controversy on this claim.

numerous forms of compensation were not taken into consideration in calculating the "regular rate of pay" on employees' overtime compensation. Plaintiff alleges that overtime shifts were "regular," that she and putative class members "regularly work[ed] more than 40 hours in a workweek" and in excess of eight hours per day, and that Defendants "uniformly failed to properly calculate and pay overtime wages." *Id.* at 24, 56-61. In *Gallager-Stevens v. Indep. Living Sys., LLC*, No. 24-cv-04582 WHO, 2025 U.S. Dist. LEXIS 18251 (N.D. Cal. Jan. 31, 2025), the Court found that "an assumption of one hour of unpaid overtime per week is reasonable for the purpose of analyzing the amount in controversy under CAFA" based on "policy or practice" allegations similar to the "regular" and "uniform" allegations made by Plaintiff. Given a conservative estimate of at least 60,000 workweeks during the putative class period (Melendez Decl. ¶ 4(f)), and also conservatively using $16.00 as an average wage (an amount lower than the average wage for either current or former employees), a single hour of overtime per workweek places at least **$1,440,000**[3] in controversy.

e. Amount in Controversy on Third Cause of Action (Meal Period Violations): The Complaint alleges that "at all relevant times, Plaintiff and other non-exempt employees were denied compliant and timely 30-minute off-duty meal periods." Sullivan Decl., Ex. A, ¶ 31. It further alleges that due to Defendants' "uniform…policies/practices, operational requirements, and work demands" employees "often could not take timely and uninterrupted" meal breaks, and that they "were not allowed and permitted to take a mandated second meal period" for shifts in excess of 10.0 hours. *Id.* The Complaint then states that meal breaks were "often interrupted and/or lasted fewer than 30 minutes." *Id.* The Complaint likewise alleges a "common practice" of not paying a meal period premium for non-compliant (including interrupted) meal periods. *Id.* ¶¶ 136-137. Further, the Complaint alleges that "for each missed or non-compliant meal period," Defendants failed to properly compensate employees at the regular rate of pay (*Id.* ¶32) and that "due to Defendants' uniform meal period practices," employees were denied legally compliant meal periods. *Id.* ¶ 33. Plaintiff seeks, *inter alia*, payment of meal period premiums for missed meal periods. *Id.* ¶ 65.

---

[3] ($16.00 x 1.5) = $24.00. $24.00 x 60,000 = $1,440,000.

In *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016), the Court found that an assumption of "one violation per week is reasonable" based on allegations similar to those in this Complaint, including allegations of regular missed breaks and a 'policy and practice' of meal and rest break violations. *Garza*, 178 F. Supp. 3d at 911. Again, using conservative estimate of 60,000 workweeks, and a $16.00/hour rate of pay, assuming one violation per week (and therefore one hour's premium pay) results in an amount in controversy on Plaintiff's meal break claim of at least **$960,000**.

f. Amount in Controversy – Fourth Cause of Action (Rest Break Violations): As with the meal break allegations, the Complaint alleges that "at all relevant times, Plaintiff and other non-exempt employees were not provided with all 10-minute rest periods for every four hours worked…due to Defendants' uniform rest period policies/practices, operational requirements and work demands." Sullivan Decl., Ex. A, ¶ 34. The Complaint further states that Plaintiff and other employees "were and are often unable to take a net 10-minute duty-free rest period." *Id.* The Complaint then reiterates that due to Defendants' "uniform rest period policies/practices" employees were "regularly denied legally compliant rest breaks." *Id.* ¶ 36. As noted above, an assumption of one missed break per workweek is reasonable given common practice allegations. *See Garza*, 178 F. Supp. 3d at 911. The same calculations thus apply with respect to Plaintiff's meal break claim: 60,000 workweeks multiplied by $16.00 per hour results in an amount in controversy on Plaintiff's rest break claim of **$960,000**.

g. Amount in Controversy – Fifth Cause of Action (Failure to Pay All Sick Time): Plaintiff alleges that "at all relevant times" Defendants failed to properly calculate the legal rate of pay for sick pay for Plaintiff and members of the putative class. Sullivan Decl., Ex. A, ¶ 30. Given a conservative estimate of 60,000 workweeks during the putative class period, and a similarly conservative assumption of one hour of sick pay per 20 workweeks, for a total of 3,000 hours of sick pay, and a conservative estimate of just $0.50 per hour in underpayment due to alleged regular rate of pay miscalculation, there is a minimum of **$1,500** in controversy on Plaintiff's sick pay claim. Defendants note that the actual number of sick pay hours is likely significantly higher, and reserve the right, in contesting any remand motion, to more precisely

assess the approximate number of sick pay hours during the class period and revise this figure upward accordingly.

h. Amount in Controversy – Sixth Cause of Action (Failure to Provide Accurate Itemized Wage Statements): The Complaint seeks penalties of $50 (initial violation) and $100 (subsequent violations), not to exceed $4,000 per employee for violations of Labor Code section 226(a), which alleged violations are derivative of the prior five causes of action. Sullivan Decl., Ex. A, ¶¶77-82. For amount-in-controversy purposes, it is appropriate to assume a $4,000 penalty per employee, given Plaintiff's "up to" and "not exceeding…$4,000" language. Given the presence of at least 1,000 employees during the total four-year class period, dividing that number by four to account for the one-year statute of limitations on wage statement claims results in 250 employees. At $4,000 per employee, this places **$1,000,000** in controversy on this cause of action.

i. Amount in Controversy – Seventh Cause of Action (Wages Due on Separation of Employment): Plaintiff seeks to recover waiting time penalties for former employees. Sullivan Decl., Ex. A, ¶¶ 83-88. To date, there are approximately 900 non-exempt employees whose relationship with Defendants terminated between November 17, 2025, and the present. *See* Melendez Decl. ¶ 5(d). These employees worked an average of approximately 6.50 hours per day, and their average hourly rate of pay was approximately $16.00. *Id.* ¶ 5(e). Based on the $16.00 hourly rate, at 6.5 hours per day, the daily penalty under Labor Code section 203 would be $104.00. Over 30 days (the cap for waiting time penalties under Labor Code section 203), this would add up to $3,120.00 in waiting time penalties per former employee. Extrapolated across 900 former employees, this increases the amount in controversy by at least **$2,808,000**.

j. Amount in Controversy – Causes of Action One through Seven: The total amount in controversy on Causes of Action One through Five of the Complaint is as follows: $3,140,000 + $1,440,000 + $960,000 + $960,000 + $1,500 + $1,000,000 + $2,808,000 = $**10,309,500**.

k. Additional Amount in Controversy – Attorneys' Fees: The above

estimates of the amount in controversy exceed the jurisdictional threshold without including the unspecified amount of attorneys' fees that Plaintiff seeks. Sullivan Decl., Ex. A, Prayer for Relief. In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. section 1332, a court must also consider the value of claims for attorneys' fees. *See Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amount); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (holding the amount in controversy may include attorneys' fees recoverable by statute); *see also*, *Fritsch v. Swift Transportation Co.*, 899 F.3d 785 (9th Cir. 2018). The Ninth Circuit has stated that where, as here, a plaintiff would be entitled to attorneys' fees if he prevails at trial, those fees "must be included in the amount in controversy." *Fritsch*, 899 F.3d at 794; *see also Arias v. Residence Inn*, 936 F.3d 920, 927 (9th Cir. 2019) ("when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *Galt G/S*, 142 F.3d at 1155-56 (same). Attorneys' fees include *prospective* attorneys' fees, not only fees incurred to date. *Fritsch*, 899 F.3d at 794; *Arias*, 936 F.3d at 927.

Attorneys' fee awards in California wage and hour class actions can easily total several hundred thousand dollars or more. *See, e.g., McGuigan v. City of San Diego*, 183 Cal.App. 4th 610, 638 (2010) (noting attorneys' fees of $1.6 million paid in settlement); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties, and waiting time penalties). Moreover, Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage and hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorneys' fees valued at approximately twenty-five percent of the projected damages. *See Herrera v. Carmax Auto Superstores Cal., LLC*, No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) (Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available.); *Hamilton v. Wal-Mart Stores, Inc.*, No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit

has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Fong v. Regis Corp.*, No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Altamirano v. Shaw Indus.*, No. C-13-0939 EMC, 2013 U.S. Dist. LEXIS 84236 (C.D. Cal. June 14, 2013) (motion to remand denied where attorneys' fees, estimated at twenty-five percent, pushed amount in controversy over five million dollars); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.") Using that figure as a benchmark, given $10,309,500 in amount in controversy on Causes of Action One through Seven, a reasonable estimate of attorneys' fees benchmarked at 25% of this potential recovery is **$2,577,375**. Adding that amount to $10,309,500 results in a total amount in controversy, inclusive of attorneys' fees, of **$12,886,875**.

15. For the above-stated reasons, the amount in controversy is sufficient for removal under CAFA.[4]

**Plaintiff and Defendants Are Citizens of Different States**

16. CAFA's diversity requirement is satisfied when any single member of a class of plaintiffs is a citizen of a state different from any defendants, when at least one member of a class is a citizen of a foreign state and one defendant is a U.S. citizen, or when at least one member of a class of plaintiffs is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. § 1332(d)(2).

17. Diversity of citizenship is determined "as of the time the complaint is filed and removal is effected." *Strotek Corp. v. Air Transp. Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002) (citations omitted).

**Plaintiff is a California Citizen**

18. A natural person's citizenship is determined by that person's state of "domicile."

---

[4] Because the amount in controversy already significantly exceeds the jurisdictional minimum under CAFA, Defendants have not included Plaintiff's eighth cause of action (expense reimbursement) in the overall amount in controversy calculations above. However, Defendants reserve the right to include this calculation in any opposition to remand. Conservatively estimating a reimbursement rate of $10 per month for cell phone use, and assuming $15,000 work months (60,000 work weeks divided by four), the additional amount in controversy on this claim would be $**150,000**.

*Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Id.* (citation omitted).

19. On information and belief, Plaintiff is domiciled in the state of California.

**Defendants are Not California Citizens**

20. For the purposes of diversity jurisdiction, a corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).

21. Defendants are citizens of Pennsylvania and Massachusetts. *See* Melendez Decl. ¶¶3, 4. Neither Defendants are citizens of California.

22. The diversity requirement of CAFA removal is satisfied because Plaintiff (*i.e.*, at least one class member) is a citizen of California, whereas Defendants are citizens of states other than California.

**The Putative Class Consists of More Than 100 Members**

23. Plaintiff has pleaded that class membership is numerous and exceeds more than 100 individuals. Plaintiff also alleges that the putative class is so large that joinder of all class members would be impracticable. *Id.* The putative class is at least 1,000 individuals. Melendez Decl. ¶5(a), (d). Therefore, based on the pleadings set forth by Plaintiff and the information provided by Defendants, the alleged putative class contains more than 100 members.

**No Defendant is a Governmental Official or Entity**

24. No defendant is a state, a state official, or any other governmental entity.

**VENUE**

25. Venue properly lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. section 1441(a). Section 1441(a) provides, in relevant part:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

26. As indicated above, Plaintiff brought this action in Alameda County Superior Court. The United States District Court for the Northern District of California encompasses this territory. Thus, venue properly lies in the United States District Court for the Northern District of California under 28 U.S.C. sections 84(c), 1391(a) and 1441(a). Pursuant to Civil Local Rule 3-2(d), the proper venue is either in the Northern District's San Francisco or Oakland courthouses.

**TIMELINESS OF REMOVAL**

27. This Notice of Removal is timely under 28 U.S.C. section 1446(b). Defendants were served with the Complaint via personal service on November 20, 2025. Sullivan Decl., Ex. B. Therefore, this Notice of Removal is timely.

**CONSENT TO REMOVAL**

28. Pursuant to 28 U.S.C. section 1453(b), a single defendant can remove a case under CAFA without the consent of co-defendants. Here, the two named Defendants jointly remove this case.

**NOTICE TO PLAINTIFF AND STATE COURT**

29. In accordance with 28 U.S.C. section 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served on Counsel for Plaintiff and filed with the Clerk of the Alameda County Superior Court. As such, all procedural requirements under section 1446 are satisfied.

**CONCLUSION**

30. For the reasons set forth above, Defendants pray that this action be removed to this Court.

Dated: December 19, 2025

JACKSON LEWIS P.C.

By: */s/ Donald P. Sullivan*
Donald P. Sullivan
Andrew J. Mailhot
Attorneys for Defendants
C & J CLARK AMERICA, INC., and
C & J CLARK RETAIL, INC.

4933-0427-0723, v. 1