UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RHEAMAE AGDEPPA,

Plaintiff,

v.

C & J CLARK RETAIL, INC., et al.,

Defendants.

Case No.  25-cv-10862-JSC

**ORDER RE: MOTION TO REMAND**

Re: Dkt. Nos. 11, 14, 15

Plaintiff brings this putative class action alleging various wage and hour claims under California state law.  (Dkt. No. 1-2.)[1]  Plaintiff originally filed this suit in Alameda County Superior Court, then Defendants removed the case to federal court based on the Class Action Fairness Act (CAFA).  (Dkt. No. 1.)  Now pending before the Court is Plaintiff's motion to remand.  (Dkt. No. 11.)  Plaintiff argues Defendants have not met their burden of proving the amount in controversy exceeds $5 million as CAFA requires.  After carefully considering the parties' briefs and the relevant legal authority, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Plaintiff's remand motion.  Defendants have met their burden of proving, by a preponderance of the evidence, the aggregate amount in controversy exceeds $5 million.

//

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

Defendants retail footwear products online.  (Dkt. No. 1-2 at 7 ¶ 15.)  Plaintiff and putative class members are California residents who worked for Defendants as non-exempt employees for the four years preceding the Complaint's filing.  (Dkt. No. 1-2 at 6 ¶ 9, 13 ¶ 42.)  Plaintiff alleges causes of action under the California Labor Code and Business and Professions Code for (1) failure to pay minimum wages, (2) failure to pay overtime wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) failure to pay all sick time, (6) wage statement violations, (7) waiting time penalties, (8) failure to reimburse necessary business expenses, and (9) unfair competition.

Defendants assert removal is proper under CAFA, 28 U.S.C. § 1332(d)(2), because the case has more than 100 putative class members, the amount in controversy exceeds $5 million, and Plaintiff is a citizen of California whereas Defendants are citizens of Pennsylvania and Massachusetts.  (Dkt. No. 1 ¶¶ 6–26.)  Defendants estimate the amount in controversy is at least $10,309,500, not including attorneys' fees.  (Dkt. No. 1 at 8 ¶ 14j.)  Plaintiff's motion for remand contends removal is improper because Defendants failed to prove the amount in controversy is more than $5,000,000, and based damage calculations "on penalties that cannot be recovered, unreasonable assumptions, and violation rates unsupported by credible evidence or proper legal authority."  (Dkt. No. 11 at 2.)

**DISCUSSION**

"CAFA gives federal district courts original jurisdiction over class actions in which the class members number at least 100, at least one plaintiff is diverse in citizenship from any defendant, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015) (citing 28 U.S.C. § 1332(d)).  Under CAFA, Defendants, as the removing parties, bear the burden of establishing federal jurisdiction.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006) (*per curium*) ("In cases removed from state court, the removing defendant [bears] the burden of establishing

United States District Court
Northern District of California

2

federal jurisdiction, including any applicable amount in controversy requirement." (citations omitted)).

Here, CAFA's first two jurisdictional requirements, minimal class size and diversity, are uncontested. The parties dispute only CAFA's third requirement—whether the amount in controversy exceeds $5 million. *Ibarra*, 775 F.3d at 1195.

"[T]he amount in controversy is the amount at stake in the underlying litigation." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (cleaned up). It is "not a prospective assessment of a defendant's liability," *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018), and does not refer to "likely or probable liability; rather, it refers to possible liability." *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise)." *Fritsch*, 899 F.3d at 793.

"Generally, the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enters.*, 231 F.3d 1129, 1131 (9th Cir. 2000). Here, the complaint is silent as to the amount in controversy because Plaintiff does not seek a specific dollar amount. (Dkt. No. 1-2 at 24–25 ¶¶ 2–15.) "Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego*, 443 F.3d at 683. When, as here, Plaintiff contests Defendants' allegations, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied[.]" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014).

Defendants may rely on "reasonable assumptions" when Plaintiff challenges allegations of removal jurisdiction. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). Reasonable assumptions "can be founded on the allegations of the complaint and do not necessarily need to be supported by evidence." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) (cleaned up). In contrast, "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. To determine CAFA jurisdiction, a district court's task is simply to determine if the defendant's

United States District Court
Northern District of California

3

"reasoning and underlying assumptions are reasonable." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022).

### A. The Parties' Estimates and Evidence

To estimate Plaintiff's class size and damages, Defendants submitted a declaration from Chris Melendez, the Vice President and Global Head of Defendants' Human Resources Operations. (Dkt. No. 1-1.)  Mr. Melendez's team collected payroll data for Defendants' non-exempt, hourly employees in California who were issued paychecks during the proposed class period of November 17, 2021 through November 2025.  (*Id.* ¶ 5.)  Relevant here, Defendants' payroll data shows during the class period, Plaintiff's proposed class consists of 1,050 employees: 150 active employees, on average earning more than $20.00 an hour and working 23 hours per week, and 900 former employees, on average earning more than $16.00 an hour and working 19.5 hours per week.  (*Id.* ¶ 5a–g.)  Class members were paid on a weekly basis, so the class period consists of at least 60,000 workweeks across all class members.[2]  (*Id.* ¶¶ 5f, 6.)  From these figures, Defendants estimate the amount of controversy is $10,309,500, not including attorneys' fees, based on:

(1) $3,140,000 for failure to pay minimum wages based on an assumption of five minutes of off-the-clock work per workweek and inclusion of California Labor Code § 1197.1 (PAGA) penalties,

(2) $1,440,000 for failure to overtime based on an assumption of one hour of unpaid overtime per week,

(3) $960,000 for meal break violations based on one missed meal break per workweek,

(4) $960,000 for rest break violations based on one missed rest break per workweek,

(5) $1,500 for failure to pay sick time,

(6) $1,000,000 for failure to provide accurate itemized wage statements based on the maximum penalty per employee and a one-year statute of limitations, and

---

[2] The Melendez Declaration states there are 63,000 wage statements in the class period. (Dkt. No. 1-1 ¶ 5f.)  Defendants' notice of removal uses 60,000 work weeks during the class period.  (Dkt. No. 1 at 5.)  "Defendants round down for purposes of providing a conservative estimate of the amount in controversy on this claim."  (*Id.* n.2.)

United States District Court
Northern District of California

(7) $2,808,000 for waiting time penalties based on the average hourly wage rate for the class members who have separated from employment with Defendants.

(*Id.* ¶ 14c–j.)

Plaintiff's motion does not estimate the amount in controversy for any claim, but objects to Defendants' reliance on the Melendez Declaration and calculations for all causes of action except sick time. Quantitatively, Plaintiff asserts "Defendants' inclusion of § 1197.1 penalties for the first cause of action is improper, [so] that $3,000,000 component must be excluded." (Dkt. No. 11 at 12.) Plaintiff also disputes assumptions underlying the amount in controversy calculations for overtime (second cause of action), meal/rest violations (third and fourth cause of action), wage statements (fifth cause of action), and waiting time penalty calculations (seventh cause of action), but does not supply alternative assumptions. (*See id.* at 11–22.) Finally, Plaintiff disputes Defendants' calculation for attorneys' fees. (*Id.* at 23–25.) Plaintiff's contentions are addressed in turn.

### 1. Defendants' Reliance on the Melendez Declaration

As an initial matter, Plaintiff's argument is unpersuasive to the extent it generally challenges Defendants' removal because it "relies entirely on vague and imprecise data points in the Declaration of Chris Melendez," including estimated hourly rates, number of wage statements, and average shift length rather than "actual payroll or timekeeping data." (Dkt. No. 11 at 10.) Plaintiff mischaracterizes Defendants' burden. Ninth Circuit precedent consistently allows defendants to use similar payroll affidavits and declarations to establish the amount in controversy for CAFA removal cases. *See, e.g.*, *Perez*, 131 F.4th at 809 (relying on declaration from a company representative showing the number of nonexempt employees it employed during the class period); *Arias*, 936 F.3d at 923 (relying on declaration from human resources officer including data on the number of nonexempt employees, hourly rate of pay, and number of workweeks worked by putative class members). Defendants can support factual allegations—like those in the Melendez Declaration—with "reasonable deductions, reasonable inferences, or other reasonable extrapolations." *Ibarra*, 775 F.3d at 1197 (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754, 771–72 (11th Cir. 2010)). Plaintiff contends "Defendants' amount-in-controversy calculation is built on stacked assumptions," (Dkt. No. 11 at 7), but "[a]s is

United States District Court
Northern District of California

5

inescapable at this early stage of the litigation, the removing party must be able to rely on a chain of reasoning that includes assumptions to satisfy its burden." *Jauregui*, 28 F.4th at 993 (cleaned up). At this stage, imposing a "heavy burden" on Defendants to prove federal jurisdiction "contravenes the text and understanding of CAFA and ignores precedent." *Id.* at 992.

### 2. Minimum Wage Calculations (First Cause of Action)

Plaintiff alleges Defendants had a "policy and practice of failing to properly record" and "consistently" failed to pay for, all time worked. (Dkt. No. 1-2 at 8 ¶ 20.) From Plaintiff's allegations, Defendants estimate the amount in controversy for unpaid minimum wages is $70,000, then double this amount to include liquidated damages for unpaid wages, for a total of $140,000 (Dkt. No. 1 at 5 ¶ 14c.) Plaintiff contends Defendants' minimum wage calculations are "[u]nsupported," but does not explain why or specifically state which assumptions are "[i]mproper." (Dkt. No. 11 at 12.) The Court finds the calculation reasonable.[3]

To the $140,000 for unpaid minimum wages and liquidated damages, Defendants add $3,000,000 for civil penalties under California Labor Code § 1197.1. Under § 1197.1, an employee who pays an employee a wage less than the minimum is subject to a civil penalty of $100 for each underpaid employee for each pay period the employee is underpaid, and a $250 penalty for subsequent violations. Defendants assume a conservative $100 penalty for each of the 30,000 pay periods within the class period. (Dkt. No. 1 at 5 ¶ 14c.) Defendants argue including these penalties is justified because Plaintiff's allegations repeatedly seek relief under Labor Code § 1197. (*Id.*; *see* Dkt. No. 1-2 at 8 ¶ 21 (alleging Plaintiff and other employees were not properly paid in violation of § 1197.1), 8 ¶ 22 (explaining employees paid less than the minimum are entitled to civil penalties under § 1197.1 within common factual allegations), 17 ¶ 55 (alleging

---

[3] From Plaintiff's allegations, Defendants estimate the amount in controversy solely for reimbursement of unpaid wages is $70,000, based on a "conservative[] estimate[] [of] five minutes of off-the-clock work per workweek," multiplied by the lowest minimum wage during the putative class period ($14.00/hour), for 60,000 work weeks: (5/60 mins) x ($14.00/ hour) x (60,000 workweeks) = $70,000. (*See* Dkt. No. 1 at 5 ¶ 14c.) Defendants doubled this amount to $140,000 because Plaintiff seeks liquidated damages in an amount equal to alleged unpaid wages under Labor Code § 1194.2. (*Id.*)

United States District Court
Northern District of California

Defendants' unlawful compensation policy "creates an entitlement to recovery by Plaintiff and members of the Classes in a civil action for the unpaid amount of minimum wages, . . . including . . . statutory penalties, . . . according to Labor Code § . . .1197").)

Plaintiff contends § 1197.1 civil penalties must be excluded because these statutory penalties can only be enforced by the State Labor Commissioner or through a representative enforcement action under the Private Attorney General Act (PAGA), "not [as] a standalone private damages remedy in an ordinary class action." (Dkt. No. 11 at 11–12.) *See Atempa v. Pedrazzani*, 27 Cal. App. 5th 809, 812 (2018) (explaining the Labor and Workforce Development Agency (LWDA), which includes the Labor Commissioner, is statutorily authorized to recover § 1197.1 civil penalties; alternatively, an aggrieved employee can recover these civil penalties in lieu of the LWDA through PAGA). And here, Plaintiff's complaint does not even mention PAGA or Cal. Lab. Code § 2699. (Dkt. No. 11 at 12.) Regardless, PAGA claims are not class claims, and non-class claims are not included in the CAFA amount-in-controversy. *See Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1122 (9th Cir. 2014) (holding PAGA claims are not class claims under CAFA); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1062 (9th Cir. 2015) (holding non-class PAGA claims could not be included in amount-in-controversy calculations to satisfy CAFA's jurisdictional requirement).[4] So, the $3 million in § 1197.1 penalties is not included in the amount-in controversy calculation.

Defendants argue "Plaintiff misunderstands the principle that for purposes of establishing the amount in controversy under CAFA, the relief sought in the Complaint – not whether Plaintiff is likely to prevail on a given claim – is dispositive." (Dkt. No. 14 at 7–8.) But the Court may

---

[4] Plaintiff could bring a separate representative action under PAGA to recover § 1197.1 penalties because "[a]lthough representative in nature, a PAGA claim is not simply a collection of individual claims for relief, and so is different from a class action." *Kim v. Reins Int'l California, Inc.*, 9 Cal. 5th 73, 86 (2020); *see also Crestwood Behav. Health, Inc. v. Superior Ct.*, 60 Cal. App. 5th 1069, 1076 (2021) ("A representative action under the Act is an enforcement action, not simply a collection of individual claims for relief, and so is different from a class action." (citations omitted)); *Ridgeway v. Wal-Mart Stores Inc.*, No. 08-CV-05221-SI, 2017 WL 363214, at *9 (N.D. Cal. Jan. 25, 2017), *aff'd*, 946 F.3d 1066 (9th Cir. 2020) (holding CAFA plaintiffs were not entitled to penalties under § 1197.1, but interpreting the statute and case law to allow an employee to enforce § 1197.1 through a representative action under PAGA).

inquire into whether recovery for a claim is possible as necessary to resolve jurisdiction if "the underlying statute itself limit[s] the damages available, and there [is] no need to delve into the merits of the defense or case." *Greene*, 965 F.3d at 774 (distinguishing a question of whether a rule or statute applies to a set of allegations from a potential statute of limitations defense). "[I]n the few cases involving a rule or measure of damages that limits liability, we may go beyond the pleadings for the limited purpose of determining the applicability of the rule or measure of damages." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986). And as discussed, the statute does not allow Plaintiff to recover § 1197.1 penalties through this class action. So, removing the $3 million in civil penalties under § 1197.1, Defendants place $140,0000 in controversy for the first cause of action.

### 3. Unpaid Overtime Calculations (Second Cause of Action)

Plaintiff's unpaid overtime claim alleges Defendants "caused Plaintiff to work overtime and hours but did not compensate Plaintiff or members of the Overtime Subclass at one and one-half times their 'regular rate of pay' for such hours." (Dkt. No. 1-2 at 18 ¶ 59.) Based on Plaintiff's general allegation Defendants had a "policy and practice of failing to properly record" and "consistently" failed to pay for all time worked (Dkt. No. 1-2 at 8 ¶ 20), Defendants assumed a single hour of overtime per workweek, and estimates $1,440,000 for unpaid overtime. (Dkt. No. 1 at 5 ¶ 14d.)[5] "When a plaintiff alleges that a defendant engaged in a policy or practice of failing to properly compensate class members for overtime hours worked . . . courts have found that an assumption of one hour of unpaid overtime per week is reasonable for the purpose of analyzing the amount in controversy under CAFA." *Gallagher-Stevens v. Indep. Living Sys., LLC*, No. 24-CV-04582-WHO, 2025 WL 354630, at *9 (N.D. Cal. Jan. 31, 2025) (citing *Cabrera v. S. Valley Almond Co., LLC*, No. 121CV00748AWIJLT, 2021 WL 5937585, at *6 (E.D. Cal. Dec. 16, 2021)

---

[5] California Labor Code § 1194 and the applicable Wage Orders require an employer to pay employees one and one-half times regular pay for time worked more than eight hours per workday. (Dkt. No. 1-2 at 18 ¶ 58.) Defendants assumed $16.00/ hour as the conservative estimate for "regular rate sof pay," and 60,000 work weeks in the class, applying these estimates to the single hour of overtime per week: ($16.00/ hour x 1.5) = $24.00; $24.00 x 60,000 workweeks = $1,440,000. (*See* Dkt. No. 1 at 5 ¶ 14d.)

United States District Court
Northern District of California

(finding assumption that a violation occurred in connection with one out of five breaks consistent with language in complaint stating violations occurred "at times")); *Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (replacing defendant's asserted 100% violation rate with "a conservative 20% violation rate, or one hour of overtime pay per week," since other courts have found this assumption reasonable)).

Plaintiff contends "a removing defendant must support its amount-in-controversy calculations with 'real evidence' that grounds its assumed violation rates in fact" if a complaint contains only generalized allegations of unlawful conduct. (Dkt. No. 11 at 13 (quoting *Ibarra*, 775 F.3d at 1199).) Plaintiff's citation to *Ibarra* is unavailing for two reasons. First, *Ibarra* held a general "pattern and practice" allegation was insufficient to support an assumption "that such violations occurred in each and every shift," *id.* at 1198–99, but here, Defendants assume a violation occurred once a week. Second, when challenging a defendant's assumption, *Ibarra* instructs it is insufficient for a plaintiff to merely state the assumption is unreasonable; instead, the plaintiff should posit an alternative assumption "grounded in real evidence, such as an affidavit [by an aggrieved party]." *Id.* at 1199.

Plaintiff's reply does not suggest an alternative violation rate but instead argues it is unsound for Defendants to assume one hour of unpaid overtime per employee when Defendants' data show "the average shift length is approximately 6.5 hours." (Dkt. No. 15 at 11–12 (citing Dkt. No. 1-1 at 3 ¶ 5h).) So, argues Plaintiff, even with an hour of additional time, the average shift would be ineligible for overtime because it would not exceed eight hours. (*Id.*) In contrast, when a defendant's own data show the average shift for class members is more than eight hours, assuming at least one hour of overtime pay per week per class member is more defensible as reasonable or even conservative. *See Soratorio v. Tesoro Ref. & Mktg. Co.*, LLC, No. 17-cv-1554 MWF (RAOx), 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("The Kowano Declaration confirms, based on Defendants' own data, that the average hours worked by putative class members in the three- and four-year periods preceding the filing of the Complaint exceeded eight hours.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Despite the apparent discrepancy between Defendants' data and its assumed violation rate, the Court cannot simply "zero out" Defendants' calculation since Defendants offered evidence and identified assumptions to support its claim estimate.  *See Jauregui*, 28 F.4th at 994 ("In a circumstance like this, merely preferring an alternative assumption is not an appropriate basis to zero-out a claim; at most, it only justifies reducing the claim to the amount resulting from the alternative assumption.").  Instead, the Court should consider the claim under a "better assumption."  *Id.* at 996.  Defendants could, for example, use a violation rate 50 percent lower than its original assumption because an average shift of 6.5 hours suggests some shifts are longer and some shifts are shorter than 6.5 hours.  *See Perez*, 131 F.4th at 807 (rerunning calculations after the district court issued order to show cause and arriving at an amount-in-controversy still "comfortably" above the statutory minimum, in an effort by the defendant to "fully demonstrate the reasonableness of its assumptions").  This approach is compatible with the principle that in estimating the amount in controversy at this stage, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy."  *Jauregui*, 28 F.4th at 993 (citations omitted).  Reducing Defendants' violation rate by 50 percent places $720,000 in controversy for the second cause of action.

### 4.  Meal and Rest Period Calculations (Third and Fourth Causes of Action)

Plaintiff's complaint alleges because of Defendants' "uniform…policies/practices, operational requirements, and work demands," employees "often could not take timely and uninterrupted" meal and rest breaks.  (Dkt. No. 1-2 at 11 ¶ 31 (meal breaks); *id.* ¶ 34 (rest breaks).)  Due to Defendants' "uniform" policies/ practices, Plaintiff alleges employees were "regularly denied legally compliant meal periods in violation of Labor Code §§ 226.7, 510, 516, and applicable Wage Orders" and "regularly denied legally compliant rest breaks in violation of Labor Code §§ 226.7, 512, and applicable Wage Orders."  (*Id.* ¶¶ 33, 36.)

Defendants estimate $960,000 for Plaintiff's meal break claims and $960,000 for Plaintiff's rest break claims based on an assumption of one meal break violation and one rest break

10

violation for each workweek.  (Dkt. No. 1 at 6 ¶ 14e–f.) [6]  To justify its assumption of one violation per week, Defendants' removal references *Garza v. Brinderson Constructors, Inc.* (*Id.* (citing *Garza*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding an assumption of "one violation per week is reasonable" based on allegations of regular missed breaks and a "policy or practice" of meal and rest break violations)).)

Plaintiff disputes Defendants' assumption every workweek involved one meal period violation, arguing "Plaintiff's meal period claim necessarily excludes workweeks involving shifts of five hours or less, shifts between five and six hours where a meal period may be lawfully waived by mutual consent, and workweeks in which compliant meal periods were provided." (Dkt. No. 11 at 15.)  Regarding rest period violations, Plaintiff similarly argues "Plaintiff's rest period cause of action presumptively narrows the putative class members who worked shifts in excess of 3.5 hours and to those who 'often' could not receive compliant rest periods." (Dkt. No. 11 at 19.)  But given Plaintiff's allegation of "regular[]" violations, and Defendants' data showing an average shift of 6.5 hours, it is not unreasonable for Defendants to assume class members were entitled to meal periods (required for a five-hour shift) and rest periods (required for a 3.5 hour shift).  (*See* Dkt. No. 1-2 ¶¶ 33, 36.)

Plaintiff's reliance on *Ibarra* for the notion "the Complaint's express use of limiting language such as 'often,'" . . . cannot support universal or near-universal violation assumptions for purposes of establishing the amount in controversy," (Dkt. No. 11 at 16 (citing *Ibarra*, 775 F.3d. at 1199)), is unavailing.  Defendants' rate does not assume a "near-universal" violation— it assumes a violation once a week.  Moreover, the Ninth Circuit has rejected Plaintiff's interpretation of *Ibarra*.  *See Perez*, 131 F.4th at 809 (discussing *Ibarra*, 775 F.3d at 1198–99).  The *Perez* defendant employer assumed "every week during the class period, it failed to pay all class members for one hour of regular time, one hour of overtime, a one-hour compensable meal break, and a one-hour compensable rest break."  *Id.* at 806–07.  The court approved the defendant's approach because it "tethered [its] assumption to the language in the complaint—

---

[6] 60,000 workweeks x $16.00/ hour = $960,000.

11

United States District Court
Northern District of California

namely, that it had committed the alleged violations 'at times' and 'throughout the statutory period.'" *Id.* at 809. So too here. Defendants' assumptions are tethered to the complaint's language alleging meal and rest period violations occurring "regularly" and "often" due to Defendants' "uniform" practices. (*See* Dkt. No. 1-2 at 11–12 ¶¶ 32–37.) And even if Plaintiff's allegations or Defendants' data could support a lower violation rate, "that does not automatically render the rate [] unreasonable." *Perez*, 131 F.4th at 810. As in *Perez*, if Plaintiff "believed that some other assumption would have been more reasonable, she was free to propose that rate," or to draft her complaint with a "more specific phrase" to constrain Defendants' range of reasonable assumptions. *Id.*; *see also Greene*, 965 F.3d at 774 ("Greene is the master of his complaint, and he owns the allegations that have landed him in federal court."). So, Defendants place in controversy $960,000 for the third and $960,000 for the fourth cause of action.

### 5. Wage Statement Calculation (Sixth Cause of Action)

Plaintiff seeks penalties for "Defendants' issuance of inaccurate itemized wage statements" in violation of § 226(a) of the California Labor Code "up to an amount not exceeding" $4,000 per Plaintiff and every member of the Wage Statement Subclass. (Dkt. No. 1-2 at 21 ¶ 82.) Based on Plaintiff's "up to an amount not exceeding" language, Defendants estimate $1,000,000 in controversy on this claim. (Dkt. No. 1 at 8 ¶ 14h.) Defendants assume there were at least 1,000 employees during the total four-year class period, then divide that number by four to account for the one-year statute of limitations on wage statement claims, and assume the maximum $4,000 penalty per employee. (*Id.*)[7]

Plaintiff disputes Defendants' assumption of violations for 250 employees because "Defendants provide no evidence establishing how many employees actually fall within the one-year limitations period, how many received noncompliant wage statements, or how many wage statements— if any—violated Labor Code section 226." (Dkt. No. 11 at 20.) But as Defendants point out, § 226(a) penalties are derived from Plaintiff's other claims. (Dkt. No. 1 at 8 ¶ 14h.)

---

[7] Defendants use the total class of at least 1,000 current and former non-exempt California employees. (Dkt. No. 1 at 4 ¶ 14b.) 1,000/ 4 = 250 employees. 250 employees x $4,000 = $1,000,000. (*See id.* at 8 ¶ 14h.)

United States District Court
Northern District of California

Plaintiff's complaint alleges "Defendants' failure to pay Plaintiff and the Wage Statement Subclass for all minimum, overtime and sick pay wages, and missed meal and rest period premiums at the appropriate legal rate" in violation of § 226(a), and seeks resulting penalties under § 226(e). (Dkt. No. 1-2 at 21–22 ¶¶ 80–82.) Additionally, "it makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Perez*, 131 F.4th at 808. So, Defendants need not, as Plaintiff requests, "explain why a derivative wage statement claim, which depends entirely on proof of underlying Labor Code violations, would plausibly arise on every wage statement issued during the class period." (Dkt. No. 11 at 20–21.) Imposing this burden would require Defendants to "prove it actually violated the law at the assumed rate," *Perez*, 131 F.4th at 808, for this claim and the claims the § 226(a) penalties derive from. Given Plaintiff's nondescript allegations and Defendants' data on number of employees during the class period, Defendants' assumptions are reasonable; contrary to Plaintiff's assertion, violation rates drawn from reasonable interpretations of the complaint need not independently be supported by competent evidence. *Id.* at 809; *see also id.* at 808 ("[A] CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint."). So, Defendants place $1,000,000 in controversy for the sixth cause of action.

### 6.  Waiting Time Penalties Calculations (Seventh Cause of Action)

Plaintiff alleges "because Defendants failed to pay all minimum, overtime, and sick pay wages, and meal and rest period premiums at the 'regular rate of pay,' Defendants also failed and continue to fail to pay Plaintiff and other non-exempt employees all wages owed at their time of separation from employment in violation of Labor Code §§ 201-203." (Dkt. No. 1-2 at 13 ¶ 40.) Under California law, an employer who fails to pay wages an employee is due upon termination may be liable for the employee's wages until the unpaid amounts are satisfied or the employee files a lawsuit, but an employee may not receive more than 30 days' wages. Cal. Lab. Code § 203(a).

Defendants estimate there are 900 non-exempt employees whose relationship with Defendants terminated between November 17, 2021 and November 2025. (Dkt. No. 1-1 at 3 ¶

5d.)  Defendants assume $3,120 in waiting time penalties per former employee and estimate $2,808,000 for this claim.  (Dkt. No. 1 at 8 ¶ 14i.)[8]  Plaintiff disputes Defendants' assumption all 900 former employees experienced a waiting time violation.  (Dkt. No. 11 at 21.)  But when a plaintiff alleges all class members whose employment was terminated within the statutory period suffered at least one unpaid wage or unpaid overtime claim, it is reasonable to assume the "vast majority (if not all)" terminated putative class members were entitled to 30 days of waiting time penalties."  *Jauregui*, 28 F.4th at 994; *see also Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1125–26 (C.D. Cal. 2010) ("The court agrees [the] allegations suggest all class members were denied some form of proper compensation during their employment, and [] the underpayment was not corrected at end of their employment.  Thus, defendants can properly assume that all employees were entitled to maximum waiting time penalties under Labor Code § 203.").  Plaintiff also disputes Defendants' use of a "a universal 30-day penalty." (Dkt. No. 11 at 22.)  But, "[t]he fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim." *Jauregui*, 28 F.4th at 994.  Because the amount in controversy reflects the maximum amount Plaintiff could possibly recover on behalf of the class, *Arias*, 936 F.3d at 927, Defendants' assumptions are reasonable and Defendants place $2,808,000 in controversy for this claim.

### 7.  Attorneys' Fees Calculations

Based on the $10,309,500 in amount in controversy on causes of action one through seven, and "a reasonable estimate of attorneys' fees benchmarked at 25% of [] potential recovery," Defendants estimate $2,577,375 for attorney fees.  (Dkt. No. 1 at 10.)  Plaintiff contends the fees are "improper and unsupported" because they are "speculative projections of fees that may or may not be incurred in the future," and because, contrary to California to law, they include attorneys' fees for waiting time penalties, meal and rest violations, and derivative claims that arise from meal and rest violations.  (Dkt. No. 11 at 23–24.)

---

[8] Based on the $16.00 hourly rate and the average shift length of 6.5 hours per day, Defendants estimate the daily penalty under Labor Code § 203 to be $104.00, multiplied by 30 days (the cap for waiting time penalties under § 203).  (Dkt. No. 1 at 8 ¶ 14i.)

United States District Court
Northern District of California

"[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794.  But because the other damages for other violations exceed $5 million, the Court need not and does not consider attorneys' fees here.  *See Arias*, 936 F.3d at 928 n.5 (explaining if a district court finds a defendant's estimate of damages in controversy would exceed the jurisdictional threshold, there would be no need to calculate attorneys); *Martin v. United Rentals (N. Am.), Inc.*, No. 3:25-CV-02041-JSC, 2025 WL 1554333, at *4 (N.D. Cal. June 2, 2025) ("The Court need not consider Plaintiff's arguments as the amount in controversy requirement is more than satisfied by the allegations as to unpaid rest period premiums and waiting time penalties.").

## CONCLUSION

Based on the adjusted assumptions, Defendants have placed $6,589,500 in controversy by a preponderance of the evidence: (1) $140,000 for minimum wage violations, (2) $720,000 for failure to pay overtime, (3) $960,000 for meal break violations, (4) $960,000 for rest break violations, (5) $1,500 for failure to pay sick time (6) $1,000,000 for failure to provide accurate itemized wage statements, and (7) $2,808,000 for waiting time penalties.  Because CAFA's amount-in-controversy is satisfied, Plaintiff's motion is DENIED.

The Court schedules an initial case management conference for April 22, 2026, at 2:00 p.m. via Zoom video.  A joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 11.

**IT IS SO ORDERED.**

Dated: March 30, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California